Petition for Naturalization of Livia FERENCI.

Petition for Naturalization of Tibor FERENCI.

Petition Nos. 219507, 219508.

United States District Court E. D. Pennsylvania.

June 6, 1963.

George Gershenfield, Philadelphia, Pa., for petitioners.

Drew J. T. O'Keefe, U. S. Atty., Eugene E. Cole, Asst. Dist. Director for Citizenship, Immigration and Naturalization Service, Philadelphia, Pa., for U. S. Department of Justice.

CLARY, Chief Judge.

The matters before the Court involve the admissions to citizenship or denials of petitions for citizenship of husband and wife who emigrated immediately after the Hungarian uprising. The questions posed are perplexing, extremely difficult of decision, and can be most effectively dealt with in terms of the two statutory conditions that the petitioners must satisfy as a prerequisite to naturalization.

1. The first condition is that no person who was a member of the Communist

party or any subsidiary within ten years of petitioning for naturalization shall be naturalized unless membership was involuntary or for purposes of obtaining employment, food rations, or other essentials of living and where necessary for such purposes. 8 U.S.C.A. § 1424 (1953), § 313, 66 Stat. 240 (1952).

While the issue has never been precisely decided, it appears that once the fact of party membership has been raised in a naturalization proceeding, the burden is upon the petitioner to establish that he comes within one of the statutory exceptions. United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889 (1929). Also, there is some vague indication from the Supreme Court that these exceptions should be read liberally. Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954); Rowoldt v. Perfetto, 355 U.S. 115, 78 S.Ct. 180, 2 L. Ed.2d 140 (1957).

The sole evidence offered by the petitioners to sustain their burden of proof is their own testimony before the Court and their statements taken by the Immigration and Naturalization Service. However, there is no contradiction of anything they have said indicating that the investigations by the Service have uncovered nothing contradictory. It might properly be asked, in a situation such as this, what further evidence could the petitioners present?

Tibor Ferenci has stated that he joined the Communist party in Hungary in 1946 out of fear that he would otherwise be unable to get a job. Some doubt is cast on this necessity by his admission that in 1954, only 10 out of 120 workers in his factory were members of the party. However, it is impossible to equate general conditions in 1946 to a specific condition in 1954. Further, he has also stated that once he joined the party, he feared reprisals if he withdrew.

Livia Ferenci, his wife, states that she joined a Communist youth organization because this was the only way she could go to college and that some affiliation was necessary to secure a job.

Petitioners' testimony and statements indicate that their membership was not absolutely essential to *survival*. If it were, they would be clearly within the statutory exceptions. On the other hand, they state that they never embraced the Communist doctrine and did not wholly turn themselves over to the party for their own personal advancement. If they had, they would be clearly without the statutory exceptions. The petitioners are somewhere between these extremes.

2. The second condition is that no person shall be naturalized unless he sustains the burden of proving that he was lawfully admitted to the United States for permanent residence. 8 U.S. C.A. § 1429 (1953), § 318, 66 Stat. 244 (1952). An entry is not lawful if procured by the willful misrepresentation of a material fact. 8 U.S.C.A. § 1182(a) (19) (1953), § 212(a) (19), 66 Stat. 182 (1952).

It is admitted by the petitioners that at the time of entry into the United States as parolees, and subsequently at the hearings for adjustment of their status to permanent residency, they willfully misrepresented their prior Communist associations. The Hearing Examiner found that the concealments were of immaterial facts because petitioners' memberships were involuntary.

There is no definitive test of materiality under § 1182(a) (19). Recently, on the related question of whether naturalization should be revoked as having been procured "by concealment of a material fact or by willful misrepresentation," [8 U.S.C.A. § 1451(a) (1953), § 340(a), 66 Stat. 260 (1952)], the Supreme Court indicated that the facts concealed are material if either they "would have warranted denial of citizenship" or "their disclosure might have been useful in an investigation possibly leading to the discovery of other facts warranting denial of citizenship." Chaunt v. United States, 364 U.S. 350, 355, 81 S.Ct. 147, 150, 5 L.Ed.2d 120 (1960).

■ This test is quite similar to that adopted by the Attorney General in a recent exclusion and deportation proceeding involving entry obtained by misrepresentation: A misrepresentation is material if either (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded. Matter of S—and B—C—, No. 1168, Atty.Gen., Oct. 2, 1961. The Attorney General offers this test as being generally consistent with prevailing judicial authority and a reading of the cases causes the Court to agree.

Applying this test, the petitioners must first prove that they were not excludable on the true facts, which is essentially a requirement that they show themselves eligible for one of the statutory exceptions discussed in problem #1. If they sustain their burden of proof in that problem, they have done likewise here.

Second, however, even if they were not excludable under the true facts, the petitioners have the burden of showing that their misrepresentations did not tend to shut off a line of inquiry relevant to their eligibility and which might well have resulted in a proper determination that they be excluded. This condition requires the shutting off of a line of inquiry which may have uncovered some *independent evidence,* over and above the misrepresented fact, that might have raised a serious question of excludability. Again, the burden of proof is upon the petitioners, but, in all fairness, it must be noted that the proof of a negative proposition will always be quite difficult.

■ The record in this case is not wholly satisfactory and additional relevant information would be of value in reaching an informed solution. But while petitioners have the burden of proving their eligibility, theirs is the civil burden which can be sustained even where some reasonable doubts plague the trier of fact. If it were not for the Hearing Examiner's findings that petitioners' affiliations were involuntary and their misstatements immaterial, this decision might be altered. However, the Hearing Examiner operated with the benefit of complete records available on the petitioners, including the several screenings and investigations. Therefore his findings of fact, the recommendations of the Service, and the complete absence of any derogatory or contradictory evidence in the record must be given respectful weight. This is particularly so in light of obvious difficulties confronting petitioners in proving what are essentially negative propositions. Accordingly, the Court finds that petitioners have sustained their burden of proving the legality of their presence in the United States and the involuntary nature of their Communist associations, thus establishing that they are eligible for the privilege of naturalization.